## PIERREPONT v. FIDELITY–PHILADEL-PHIA TRUST CO. et al.

District Court, E. D. Pennsylvania. March 21, 1929.

No. 4483.

Alexander R. Staples and John Lewis Evans, both of Philadelphia, Pa., for plaintiff.

Henry C. Boyer, Thomas Raeburn White, and White, Parry, Schander & Maris, all of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge. ■ This case comes before the court upon motions (a) to strike out specific portions of the answers filed by the defendants, and (b) to strike out the entire answers, and for judgment pro confesso. The purpose is to test the legal sufficiency of the answers, and the method adopted is proper. National Ass'n of Certified Public Accountants v. United States, 53 App. D. C. 391, 292 F. 668.

The material facts as pleaded in the bill and admitted by the answers are as follows: The will of Charles Chauncey left the residue of his estate in trust for his wife for life, with remainder over, either to the plaintiff absolutely, or to the plaintiff for life with remainder to her descendants. (That question involves the application of the rule in Shelley's Case, and is now pending for decision in the Orphans' Court of Montgomery County, Pennsylvania.) During the life of the widow, the trustee received $28,000 in "dividend obligations" of the Richmond, Fredericksburg & Potomac Railroad, and transferred them to her. The life tenant died, and the $28,000 dividend obligations are still in the possession of her executors who are, with the trustee, defendants in the bill.

Under what is known as the "Massachusetts Rule," which was adopted by the United States Supreme Court in the case of Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525, all stock dividends declared during the existence of a trust of this kind belong to the corpus of the estate without regard to whether they represent earnings before or after the beginning of the trust. Under what is known as the "Pennsylvania Rule," stock dividends must be apportioned between the life tenant and corpus by giving the corpus sufficient to keep intact the value of the shares as they were at the time the trust began and by giving the rest of the dividend to those entitled to the income.

The answers in this case allege that the dividend obligations represented income earned during the life tenancy, and this must be taken as a conceded fact. It is also un-

disputed, and I hold that the "dividend obligations" in this case are in reality stock dividends as that term is used in the various decisions which will be discussed.

The question for decision is whether this court is bound to follow the law as established by the courts of Pennsylvania, or the rule adopted by the Supreme Court of the United States. If the former, then the answers set forth a complete defense to the bill. If the latter, then they are insufficient and must be stricken out. It is the position of the plaintiff that the question here involved is a question arising under the general rules of equity jurisprudence as to which federal courts sitting in equity follow the law laid down by the Supreme Court of the United States, and are not bound by the decision of the state courts. It is the position of the defendant that the issue involves a well-established rule of property as to which the decisions of the state courts are binding upon federal courts acquiring jurisdiction.

■ I think that the plaintiff gives too broad a scope to the principle which he states as the basis of his position. It is not the law that the mere fact that the case before the court is one which presents a proper ground of equity jurisdiction is sufficient to relieve the federal court of the duty of following the decisions of the state courts as to all matters which may come before it for determination in the case. The rule in question has its origin in the principle earlier announced that the equitable jurisdiction of the federal courts is that which was exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the passing of the Judiciary Act (1 Stat. 73), and that it can neither be impaired nor enlarged by state laws. The cases in which the rule has been applied have usually involved questions of equitable remedies and modes of proceeding, although the decisions are broad enough to include general rules of equity jurisprudence. An example of this is United States v. Olzak (D. C.) 6 F.(2d) 1014. In Mason v. United States, 260 U. S. 545, 558, 43 S. Ct. 200, 203 (67 L. Ed. 396), the Supreme Court quoting with approval Independent District v. Beard (C. C.) 83 F. 5, said: "It is undoubtedly true that the United States courts sitting as courts of equity have a freedom of action. * * * But these decisions relate to the practice, the impairing of jurisdiction, rather than to the determination of the rights of parties after jurisdiction has been acquired."

■■ When reference is made to "general principles of equity jurisprudence," the rights (as distinguished from the remedies) included in that term mean rights cognizable by courts of equity as distinguished from rights recognized solely by courts of common-law jurisdiction. The thought just stated is arrived at rather by process of exclusion than from any comprehensive definition because, so far as I have found, no court has attempted to say exactly what rights are included in the general principles of equity jurisprudence, for the purpose of establishing what rules are to be binding upon the federal courts. At all events, it is clearly settled that substantial rights resting upon state statutes or decisions, especially when they constitute rules of property, are as obligatory on the federal courts in equity as on the state courts. See 25 C. J. 829, and cases there cited in note 52. "* * * The principle [that the courts of the state cannot abridge the equity jurisdiction of the federal courts] has not been carried so far as to deny to a party litigating in those courts substantial rights." Collins Mfg. Co. v. Wickwire Spencer Steel Co. (D. C.) 14 F.(2d) 871, citing Brine v. Insurance Co., 96 U. S. 637, 24 L. Ed. 858; Independent District of Pella v. Beard (C. C.) 83 F. 5; Mason v. United States, 260 U. S. 545, 43 S. Ct. 200, 67 L. Ed. 396. In this respect, no distinction is made between rights arising under well-established and accepted decisions of state courts and rights arising under state statutes. See 25 C. J. 845.

In passing, reference may be made to the case of Collins Mfg. Co. v. Wickwire Spencer Steel Co. (D. C.) 14 F.(2d) 871, in which the court held that even if the rights involved in the action are rights of an equitable character, when tested by general principles of equity, a party "cannot avoid the enforcement of these equitable rights by removing the suit from the state to the federal court."

■ Is the Pennsylvania rule relating to the apportionment of stock dividends between life tenant and remainderman a rule of property? In Bucher v. Cheshire R. Co., 125 U. S. 555, 583, 8 S. Ct. 974, 973 (31 L. Ed. 795) the Supreme Court defined rules of property in this connection as "those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto. * * *" Accepting this definition, the plaintiff says in her reply brief: "No question of the descent of property is involved. The difference between the Pennsylvania decisions and the United States decisions as to the distribution of a stock dividend in no way depends upon the construction of the will." This brings us to what

appears to be the ultimate question, namely, whether the rule as to the disposition of stock dividends is a rule designed to ascertain or effectuate, by means of a legal presumption, the intention of the testator or donor. It would seem to be beyond question that disposition of any property under a will, whether it is in existence at the death of the testator or is an accretion to or arises from property bequeathed, must, in the last analysis, depend upon the ascertainment of the testator's intention. The will is the only source of title which can possibly be invoked by any claimant to such property. It is the only guide by which the court can determine the ownership of such property. No one would suggest that if a testator should specifically provide that stock dividends declared after his death upon stock placed in trust by him should go to some specific person named, such direction could be disregarded and the stock dividends diverted to any one else. In Jones v. Integrity Trust Co., 292 Pa. 149, 156, 140 A. 862, 864, the Supreme Court of Pennsylvania by Mr. Justice Simpson said: "Our attention has been called to the fact that in some quarters it is supposed that our prior decisions on the subject would be applicable in cases of extraordinary stock dividends and rights to subscribe, even though the testator or settlor who created the trust, had provided a different method of distribution under such circumstances. This is incorrect; what the will or deed specifies must be carried into effect, so far as it is legal." In Thompson's Estate, 262 Pa. 278, 280 [105 A. 273], the court said: "But those laws [banking laws] play no part in determining what are the relative rights of life tenants and remaindermen of stock held in trust. They are to be settled solely by what the will says: Boyer's App., 224 Pa. 144 [73 A. 320]. It is clear that testator intended * * *." From a reading of Boyer's Appeal, referred to above, and Nirdlinger's Appeal, 290 Pa. 457, 139 A. 200, 56 A. L. R. 1303, the leading Pennsylvania case on the subject, it will be seen that the same consideration is the basis of those decisions. In Eisner v. Macomber, 252 U. S. 189, at page 234, 40 S. Ct. 189, 203 (64 L. Ed. 521, 9 A. L. R. 1570), Mr. Justice Brandeis, in discussing Gibbons v. Mahon, supra, said: "The question was in essence: What shall the intention of the testator be presumed to have been? On this question there was great diversity of opinion and practice in the Courts of English-speaking countries. Three well-defined rules were then competing for acceptance," etc.

The weight of authority sustains the contention of the defendant that the rule of the state governs. Thus, in Allen v. Tate (C. C. A.) 6 F.(2d) 139, the court, in a bankruptcy proceeding, dealing with the question whether or not a spendthrift trust created by a will could be subjected to the claims of creditors, said: "As the decedent was a resident of Pennsylvania at the time of his death, and the property involved is located there, the decisions of that state must govern." In Jones v. Harrison (C. C. A.) 7 F.(2d) 461, a similar question was before the court. After stating the English rule by which the right of alienation and liability for debts attached to a spendthrift trust regardless of the testator's intention, and the American rule which renders the intent of the testator superior to the claims of creditors and the power of the beneficiary, the court said: "Whether the American Rule shall be applied to equitable interests under a trust is a local rule of property binding on federal courts." It may be noted in the case just cited that the court found that the courts of the state of the testator's domicile had not taken any well-settled position upon the subject, and were compelled to treat the question as though it were res integra. In Barber v. Pittsburgh, Fort Wayne & C. R. Co., 166 U. S. 83, 17 S. Ct. 488, 41 L. Ed. 925, the court said: "When the construction of certain words in deeds or wills of real estate has become a settled rule of property in a State, that construction is to be followed by the Courts of the United States in determining the title to land within the State, whether between the same or between other parties." While that case involved the title to land, I do not find any decisions restricting the general principle to rules of real property as distinguished from rules relative to personal property.

The case of Gibbons v. Mahon, supra, relied on by the plaintiff, was an appeal from the Supreme Court of the District of Columbia, and its effect was to establish a rule of administration for decedent's estates in the District of Columbia. It did not involve a decision that the question at issue was not a rule of property or a question as to which the federal courts were not bound to follow state decisions because, of course, there was no state rule to be applied. In Mercer v. Buchanan (C. C.) 132 F. 501, the court found as a fact that the dividends were actually declared out of the capital of the company and "pro tanto a liquidation and distribution of the backbone and corpus of the Apollo Company." Such being the case, they would not belong to the life tenant either under the rule in Pennsyl-

vania or under the rule of Gibbons v. Mahon. It will be noted that in that case, the court, while it said that Gibbons v. Mahon was strikingly in point, followed the Pennsylvania decisions. Lanston v. Lanston (App. D. C.) 290 F. 315, was in the Court of Appeals of the District of Columbia, and of course followed Gibbons v. Mahon. McDonald v. Maxwell, 274 U. S. 91, 47 S. Ct. 497, 71 L. Ed. 942, 55 A. L. R. 705, was also an appeal from the Court of Appeals of the District of Columbia. In Brown v. Wisconsin Syndicate (C. C. A.) 19 F. (2d) 198, the court followed the rule of Gibbons v. Mahon, but there is nothing in that opinion to show what the rule in Minnesota was, and the question whether the court was bound to follow the state rule or the federal rule was apparently not raised, and was not considered. The same statement may be made as to Smith v. Sweetser (C. C. A.) 19 F. (2d) 974. Buchanan v. National Savings & Trust Co., 57 App. D. C. 386, 23 F. (2d) 994, was in the Court of Appeals of the District of Columbia.

By the foregoing review of authorities which expressly follow Gibbons v. Mahon, supra, it will be seen that the only case in which the question of a different state rule was raised and presented to a federal court, and in which the court followed the rule of Gibbons v. Mahon, was Palmer v. Pullman Co. (D. C.) 252 F. 286, cited and relied on by the plaintiff. For the reasons given in this opinion, I am unable to agree to the conclusions reached by the learned judge in that case.

The motions to strike out are denied, and the answers adjudged sufficient.